**UNITED BARGE COMPANY, Plaintiff,**

v.

**NOTRE DAME FLEETING & TOWING SERVICE, INC., et al., Defendants.**

**No. 74–485 A (2).**

United States District Court,
E. D. Missouri, E. D.

Feb. 25, 1977.

Elmer Price, Goldstein & Price, St. Louis, Mo., for plaintiff.

Joseph M. Kortenhof, Thomas E. Fitzgibbons, Lucas & Murphy, St. Louis, Mo., for defendants.

## MEMORANDUM

REGAN, District Judge.

This is an action to recover damages resulting from the January 10, 1973 sinking of Barge DP–224. The barge, loaded with 47,500 bushels of corn, had been delivered on January 5, 1973, by its charterer, United Barge Co. (United) to defendant Notre Dame Fleeting & Towing Service (Notre Dame) for fleeting at Notre Dame's Arsenal Island Fleet in the St. Louis Harbor. Admittedly, the barge was at all times thereafter under the sole care, custody and control of Notre Dame as bailee for hire.

At the time the barge was delivered to United and continuing thereafter there was heavy ice in the river floating down on the fleet. By the time of the casualty, unobserved by United, ice had built up under the length of the barge's hull. On the afternoon of January 9, 1973, Notre Dame was notified that the river stage in the St. Louis Harbor would drop about 4 feet in the next 24 hour period and another 4 feet in the following 24 hour period. The actual drop in the river stage in the 24 hour period of January 9–10, 1973, was more than 4 feet.

By reason of the potential danger posed by the predicted drop, Notre Dame closed its fleets to all incoming barges and attempted, on January 10, to remove Barge DP–224 (and other barges) to deeper, safer, water. However, because of the ice built up under the hull, Notre Dame found that the barge was hard aground in about 4 feet of water. Notre Dame then employed defendant Smitty's Harbor Service, Inc. (Smitty's) to supervise the removal and remooring of the barge. Captain Smith, the president and general manager of Smitty's was in personal charge of the operations.

At the instance of Captain Smith, Notre Dame engaged the services of the M/V O.H. Ingram to free the barge. An attempt to pull the barge off ground by a direct pull was unsuccessful. The O.H. Ingram then directed her wheel wash upstream and against the current under the downriver end of both another barge and the DP–224 for at least 40 minutes. The purpose of this maneuver was to wash out the ice from under the DP–224. As noted, that barge had been hard on ice for its entire length. However, since the wheel-wash was only under the downstream end of the barge, only the ice from that end was being washed out, large chunks coming loose from about one half the length of the barge and floating downstream. The result was to remove the support under the downstream end of the barge, so that with the upstream half of the barge still hard on the ice, the weight of the barge, including the weight of the cargo, caused it to break in half. No effort was made to prevent the barge from sinking after it broke.

Salvage operations were promptly commenced. The cargo loss was $21,663.81. Other damages were incurred for salvage and temporary repairs to the barge and survey costs, as well as for the estimated cost of permanent repairs, for which we accept the estimate of Captain Clark. The barge was never repaired. However, the cost of repairs plus cost of salvage aggregated less than the fair market value of the barge after deducting the amount realized for its sale at salvage. Total damages sustained by United are in the amount of $71,926.73.

We find that the barge was in seaworthy condition when delivered to Notre Dame, so that under the law of the maritime bailment a prima facie case against that defendant was made by the evidence showing that the barge which was delivered in good condition was redelivered in a damaged condition. In our judgment, Notre Dame has failed to disprove the prima case. It is also our view that by the exercise of ordinary care, Notre Dame could (and should) have became aware of the ice condition under the hull of the barge in time to have taken effective preventive action. Even so, the damage could have been avoided but for the negligence of Smitty's and the O.H. Ingram (for which Notre Dame as bailee is also responsible) in their attempt to free the barge.

Defendants argue that the wash was intended to be directed only toward the other barge, but the fact remains that (whether so intended or not) the wheel washing operation was being conducted under part of Barge DP–224 as well as under the other barge. And it was precisely because the ice was washed from only one end of the barge that a hazardous condition was created by the removal of the support at one end that the barge was caused to break. Yet defendants not only negligently failed to make any inspection during the course of the wheel washing operation to determine the effect thereof on the barge, but negligently failed to direct the operation along the entire length of the barge.

By way of summary, Notre Dame failed to overcome plaintiff's prima facie case by a showing that the loss was due to causes for which it was not responsible. The other defendants were also guilty of negligence which directly contributed to the casualty so that all defendants are liable for the damages we have found together with interest thereon from January 10, 1973.

We next consider the cross-claims. Defendants Ingram Barge Co. and Ingram Corporation (Ingram) have cross-claimed against Notre Dame and Smitty's based on a claim of indemnity. We find from the evidence that Ingram permitted the use of the O.H. Ingram only upon an oral agreement that Smitty's and Notre Dame would indemnify and hold Ingram harmless from any liability to United. In this situation, and particularly in light of the further fact that the operation was under the direct overall supervision of Captain Smith, we find that Ingram is entitled to recover on the cross-claim. For the same reasons, we find that Notre Dame and Smitty's are not entitled to recover on their cross-claim against Ingram. The theory of that cross-claim is that whatever damages United may have sustained were directly caused by the active, primary and affirmative negligence of Ingram. However, contrary to the allegation in the cross-claim, the O.H. Ingram was not under the exclusive control of its captain and crew. Captain Smith, the agent of cross-claimants, made the decisions as to the procedure to follow and supervised its implementation. And, as we have found, cross-claimants are precluded by their indemnity agreement from asserting this claim.

The foregoing memorandum constitutes our findings of fact and conclusions of law. Judgment will be entered in accordance herewith.

## JUDGMENT

The Court having this day entered its MEMORANDUM herein, NOW, THEREFORE, in accordance therewith,

IT IS HEREBY ORDERED and ADJUDGED that plaintiff have and recover from all defendants the sum of $71,926.73 together with interest thereon at the rate of 6 per cent per annum from January 10, 1973 to the date of this judgment.

IT IS FURTHER ORDERED and ADJUDGED on the cross-claim of defendants Ingram Barge Co. and Ingram Corporation, that said defendants recover from Notre Dame Fleeting & Towing Service, Inc. and Smitty's Harbor Service, Inc., by way of indemnity, the amount adjudged in favor of plaintiff and against said cross-claimant defendants; and

IT IS FURTHER ORDERED and AD-JUDGED that defendants Notre Dame Fleeting & Towing Service, Inc. and Smitty's Harbor Service, Inc. take nothing on their cross-claim against defendants Ingram Barge Co. and Ingram Corporation.